UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SECTOR NAVIGATION COMPANY                CIVIL ACTION

VERSUS                                   NO. 06-1788

M/V CAPTAIN P, her engines,              SECTION "J" (1)
tackle, furniture, apparel,
appurtenances, etc. *in rem*

## ORDER AND REASONS

Before the Court is Defendant's **Motion to Dismiss on the Basis of Forum Non-Conveniens, International Comity and *Lis Alibi Pendens*. (Rec. Doc. 41).** Plaintiff opposes the motion, which was set for hearing on June 7, 2006. Thereafter, the Court requested oral argument, which was held on October 4, 2006. The matter was taken under advisement. For the reasons that follow, the Court finds that this motion should be denied.

## Factual and Procedural History[1]

A few months ago, two foreign flag vessels, the M/V CAPTAIN P and the ESTELLA, collided in the Bonny River near Port Harcourt, Nigeria. Each vessel was being navigated by a

---

[1]      These facts were taken either from the pleadings, the memoranda of counsel, or uncontested statements made by counsel at oral argument.

compulsory Nigerian pilot.  Each vessel's crew is foreign (the
crew of the M/V CAPTAIN P consisted of Bulgarian, Polish,
Ukranian, and Filipino citizens; the crew of the ESTELLA
consisted of Greek and Filipino citizens).  Both vessels are
owned by Greek companies.  Specifically, Solar Dawn Shipping Ltd.
("Solar Dawn") owns the CAPTAIN P, and Sector Navigation Company
("Sector") owns the ESTELLA.  The M/V CAPTAIN P operates under
the Panamanian flag, and the ESTELLA operates under the Liberian
flag.  Each vessel sustained damages, but the ESTELLA was more
severely damaged and is still sitting in the river near the site
of the collision.  The M/V CAPTAIN P sustained less damage, and
was able to continue on her scheduled voyage.

Shortly after the collision, a suit was filed in Nigeria by
Solar Dawn, seeking to limit its liability pursuant to Nigeria's
limitation of liability laws.  That suit remains pending in
Nigeria.  Subsequently, when the M/V CAPTAIN P arrived in New
Orleans, her next port of call after the collision, Sector filed
this *in rem* proceeding and had the vessel seized.  In order to
release its vessel, Solar Dawn posted security for the stipulated
value of the vessel, $3.25 million U.S. Dollars.  Solar Dawn, as
owner of the M/V CAPTAIN P, now asks this Court to dismiss this
action based on *forum non conveniens*, and to avoid parallel
proceedings and the need to rule on questions of Nigerian law and

2

navigational rules.

After the Nigerian limitation action and this *in rem* lawsuit were filed (and while this the motion to dismiss was pending), Solar Dawn initiated still another lawsuit in Nigeria; this one both an *in rem* and *in personam* proceeding which seeks damages resulting from the collision.  Sector, as owner of the ESTELLA, moved to dismiss the limitation action in Nigeria on several grounds.  The Nigerian court denied Sector's motion to dismiss, and Sector has appealed that decision.  The Nigerian court has also ordered the arrest of the ESTELLA pending the provision of security in the amount of $584,248.00 to secure Solar Dawn's claim for damages.  No security has been posted to date.

### The Parties' Arguments

Defendant claims that this case should be dismissed based on three theories: (1) forum non conveniens; (2) international comity; and (3) *lis alibi pendens*.

First, Defendant asserts that this case should be dismissed based on forum non conveniens, asserting that Nigeria is clearly an alternative forum because there is already a lawsuit pending there.  In anticipation of Plaintiff arguing that Nigeria is not a competent forum, Defendant asserts that Plaintiff entered Nigerian waters to trade there, was involved in an accident there, and is therefore subject to Nigerian jurisdiction.

3

Defendant argues that all of the private and public interest factors espoused in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947) and <u>Piper Aircraft v. Reyno</u>, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 419 (1981), make Nigeria the more appropriate, convenient forum.  Plaintiff disagrees, arguing that the motion to dismiss based on forum non-conveniens should be denied because Defendant has failed to carry its burden to show a compelling reason for this Court to decline jurisdiction. Specifically, Plaintiff asserts that Nigeria is not an adequate forum based on the limitation fund established by Nigerian law that would deprive Plaintiff of any meaningful remedy for the total loss of its vessel.

Further, Plaintiff claims that the balance of private and public interest factors weighs against dismissal. Plaintiff claims that the public interest factors weigh heavily against dismissal - especially because this case involves a maritime *in rem* proceeding.

Second, Defendant argues that international comity principles require the dismissal of this action.  Defendant argues that comity principles are very important in international proceedings as they promote international cooperation, predictability, and stability.  Plaintiff did not specifically address this argument in its opposition.

4

Third, Defendant argues that this Court should refuse to exercise jurisdiction on the basis of *lis alibi pendens* because parallel litigation is on-going in another country and involves the same parties, vessels, witnesses, and issues.  Plaintiff opposes Defendant's arguments by asserting that this case is neither parallel or congruent to the Nigerian proceeding; therefore, *lis pendens* does not apply here.  Plaintiff states that this issue is complicated because *lis pendens* issues arise infrequently in maritime cases.

## Discussion

After the M/V CAPTAIN P was seized while within the jurisdiction of this Court, her owner, Solar Dawn, secured her release by furnishing a Letter of Undertaking in the amount of $3.25 million, an amount equal to the stipulated value of the vessel following the collision.  That "res" is still present, giving this Court *in rem* jurisdiction.  The decision of whether the Court in these circumstances should nonetheless dismiss the case because there is an alternative, more "convenient" forum, is committed to the sound discretion of the Court.  As the Supreme Court has explained:

> The forum non conveniens determination is
> committed to the sound discretion of the trial
> court. It may be reversed only when there has been
> a clear abuse of discretion; where the court has
> considered all relevant public and private

> interest factors, and where its balancing of these
> factors is reasonable, its decision deserves
> substantial deference.

Piper, 454 U.S. at 257 (emphasis omitted); see also McLennan v.
Am. Eurocopter Corp., 245 F.3d 403, 423 (5th Cir.2001) ("We
review the district court's denial of a motion to dismiss for
forum non conveniens for a clear abuse of discretion.").

The "doctrine of forum non conveniens proceed[s] from [the]
premise [that] ⋯ [i]n rare circumstances, federal courts can
relinquish their jurisdiction in favor of another forum."
Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 722, 116 S.Ct.
1712, 135 L.Ed.2d 1 (1996) (emphasis omitted).  A court may
decline to exercise its jurisdiction specifically when it appears
that the convenience to the parties and the interest of justice
suggests that the case should be tried elsewhere. See Piper, 454
U.S. 235.  The Supreme Court initially explained the doctrine of
forum non-conveniens in Gulf Oil, 330 U.S. 501 (1947).  Later, in
Piper, the Supreme Court built upon its previous Gulf Oil
decision and set out the framework for analyzing forum non
conveniens in an international context. The Court in Piper
explained that first, "the court must determine whether there
exists an alternative forum" and second, the court must determine
which forum is best suited to the litigation. 454 U.S. at 254-55.

6

The defendant bears the burden of proving the above if it is to overcome the strong presumption in favor of the plaintiff's choice of forum.  <u>Id.</u>

Courts must consider whether "certain private and public interest factors weigh in favor of dismissal" in the second step of its analysis. <u>McLennan</u>, 245 F.3d at 424.  Private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the costs of obtaining attendance of willing witnesses; (4) the possibility of viewing the premises, if viewing would be appropriate to the actions; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. <u>Gulf Oil</u>, 330 U.S. at 508. Public interest factors, on the other hand, include (1) administrative difficulties resulting from court congestion; (2) imposing jury duty on the people of a community who have no relation to the litigation; and (3) the local interest in having controversies decided at home.[2]

---

[2]     In <u>Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv</u>, 711 F.2d 1231, 1238 (5th Cir. 1983), the Fifth Circuit explained:

> The balancing analysis is predicated upon the finding that there exists an adequate and available alternative forum. As the Supreme Court has explained, "[a]t the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum." Piper, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. This finding is necessary because forum non conveniens "presupposes at least

In maritime cases, such as the one, this doctrine is often asserted by defendants when the plaintiff is a foreign citizen seeking a more favorable forum in the United States. The Supreme Court's Piper decision first addressed this issue. In Piper, the plaintiff was the representative of a Scottish citizen who had been killed in an airplane crash in Scotland. The lawsuit was filed in California against the Pennsylvania manufacturer of the plane and the Ohio manufacturer of the plane's propellers. The case ultimately ended up in federal court in Pennsylvania. The district court relied on the Gulf Oil factors and dismissed the action based upon forum non conveniens. It concluded that the strong presumption that usually favors a plaintiff's choice of forum applied with less force when the plaintiff was a foreign citizen. The Supreme Court agreed and explained that "[b]ecause the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice [of forum] deserves less deference." Piper, 454 U.S. at 256.[3]

_____

two forums in which the defendant is amenable to process."
Gilbert, 330 U.S. at 506-07, 67 S.Ct. at 842. If no
alternative forum is available to plaintiff, a forum non
conveniens dismissal should not be granted.

[3]     In an *in rem* proceeding such as this one, as opposed to an *in personam* proceeding, a court need not be as suspicious of a plaintiff's motive for bringing a lawsuit in a foreign forum because it can be assumed that the forum selected by the plaintiff is convenient based on the vessel's presence. See Perusahaan, 711 F.2d at 1240, n. 24.  Here, Plaintiff filed this lawsuit and had the vessel seized in this district, which was the very first port of call following the collision in Nigeria.

The Supreme Court next addressed the issue of whether a
district court should uphold the plaintiff's choice of forum if
the substantive law of the alternative foreign forum would result
in a less favorable outcome for the plaintiff. The Court held
that simply because foreign law was less favorable for the
plaintiff should not be given conclusive - or even substantial -
weight in the inquiry.  The Supreme Court instructed courts to,
instead, focus on the relative convenience of each forum as a
place for trial.  However, the <u>Piper</u> court went on to add:

> We do not hold that the possibility of an
> unfavorable change in law should never be a
> relevant consideration in a forum non conveniens
> inquiry. Of course, *if the remedy provided by the*
> *alternative forum is so clearly inadequate or*
> *unsatisfactory that it is no remedy at all, [this]*
> *may be given substantial weight; the district*
> *court may conclude that dismissal would not be in*
> *the interests of justice.*

<u>Id.</u> at 254, <u>emphasis omitted and added</u>.  The Fifth Circuit has
explained that when the alternative forum is not an "adequate
alternative," dismissal may be inappropriate on that ground
alone.  <u>Perusahaan</u>, 711 F.2d at 1238.

The affidavit of Femi Atoyebi, an expert in Nigerian
maritime law, explains that if Solar Dawn is successful in its
Nigerian limitation action, Sector's claim would be limited to a
maximum recovery of $3,008 U.S. dollars even though Sector claims
$11,000,000 in damages and Solar Dawn's vessel, the M/V CAPTAIN

P, is admittedly valued at $3.25 million U.S. dollars.[4]  In other words, if limitation is successfully invoked, Solar Dawn's maximum liability in Nigeria is .0926 percent of the undisputed value of its vessel.  Stated still another way, under the circumstances of this case, the maximum limitation fund in Nigeria is *less than one-tenth of one percent* of the maximum limitation fund available in this Court.  Under the Limitation of Liability Act, 46 App. U.S.C.A. § 181 et seq., in the event Solar Dawn is successful in proving its entitlement to limitation, its maximum liability would be the post-collision value of its vessel, which in this case it concedes is $3.25 million.[5]

Generally, a foreign forum is adequate if it at least allows the filing of the type of suit involved and provides *some* remedy,

---

[4]     It is worth noting that during oral argument, defense counsel conceded that the amount calculated by Mr. Atoyebi as the maximum amount recoverable in Nigeria is correct or very near to being correct.  Defense counsel also conceded that the market value of the M/V CAPTAIN P, post-casualty, is roughly $3,250,000 U.S. dollars.  Defense counsel argues, however, that even if this Court allows this matter to proceed before it, Nigerian limitation law must be applied.  If true, this would undermine Plaintiff's argument that this Court should retain jurisdiction over this matter because it offers the only adequate forum due to its differing limitation law.

[5]     Despite Defendant's assertions to the contrary, it would be proper for this Court to apply United States limitation law to this proceeding - even if the Court ultimately concludes that substantive Nigerian law governs liability.  See Nigeria Nat. Petroleum Corp. v. S/V Seabulk Merlin, 410 F.Supp.2d 1218 (S.D.Fla. 2005) (a limitation of liability under the Nigerian Merchant Shipping Act was a matter of procedural law - not substantive law - therefore, shipowner's limitation of liability for maritime incident was governed by the United States Limitation of Shipowner's Liability Act, regardless of whether liability itself was determined under Nigerian law). Cf. Karim v. Finch Shipping Co. Ltd., 2000 WL 98215 (E.D. La. 2000) ("limitation is a procedural right governed by the law of the forum").

albeit one that is substantially less than provided by U.S. laws. However, the Supreme Court in _Piper_ made a point of not foreclosing all possibility of an unfavorable change in law as ever being a relevant consideration in a _forum non conveniens_ inquiry.

This Court finds that the result under Nigeria's limitation rules would be "so clearly inadequate [and] unsatisfactory that it is no remedy at all." _Piper_, 454 U.S. at 254. However, there is Fifth Circuit precedent which, at first blush, seems to compel a different conclusion.

In _Gonzales v. Chrysler Corporation_, 301 F.3d 377 (5th Cir. 2002), a Mexican citizen who had purchased a Chrysler LHS in Mexico, sued Chrysler in tort after his three-year-old son was killed by the force of the car's passenger-side air bag deployment during an automobile accident.  The accident occurred in Mexico, involved only Mexican citizens, and was witnessed by only Mexican citizens.  However, Plaintiff filed suit against the United States manufacturers of the car and the air bag in Texas federal court.  Incidentally, the only connection to Texas was that while in Texas, Plaintiff had seen several advertisements for the Chrysler LHS and had visited a couple of Houston car dealerships, which ultimately induced him to purchase a Chrysler LHS after he returned to Mexico.  Based on those facts, Defendant

11

filed a motion for dismissal based on forum non conveniens.  This motion was granted by the district court, and Plaintiff appealed to the Fifth Circuit.

On appeal, the Fifth Circuit addressed the issue of whether the Mexican forum is an adequate alternative forum for resolving the dispute based on the limitation imposed by Mexican law on the award of damages.  Plaintiff argued that the Mexican forum was inadequate because Mexican tort law did not provide for a strict liability theory of recovery against Defendants and also because Mexican law caps the maximum award for the loss of a child's life at approximately $2,500.

The Fifth Circuit determined, first, that based on <u>Piper</u>, the Mexican forum is not rendered inadequate simply because Mexican law does not allow for strict liability.  Next, the Fifth Circuit addressed the issue relating to the damages available in the Mexican forum and, admittedly, found it "slightly more problematic." 301 F.3d at 381.  In determining whether the Mexican forum was rendered inadequate by the amount of recovery available to Plaintiff, the Court first addressed principles of comity.  The Fifth Circuit ultimately determined that the district court had not erred when it found that the cap on damages did not render the Mexican forum inadequate.  It reasoned:

Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. In resolving this trade-off, the Mexican people, through their duly-elected lawmakers, have decided to limit tort damages with respect to a child's death. It would be inappropriate-even patronizing-for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims.  In another forum non conveniens case, the District Court for the Southern District of New York made this same point observing (perhaps in a hyperbolic choice of words) that "to retain the litigation in this forum, as plaintiffs request, would be yet another example of imperialism, another situation in which an established sovereign inflicted its rules, its standards and values on a developing nation." In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984, 634 F.Supp. 842, 867 (S.D.N.Y.1986), aff'd as modified, 809 F.2d 195 (2d Cir.1987). In short, we see no warrant for us, a United States court, to replace the policy preference of the Mexican government with our own view of what is a good policy for the citizens of Mexico.

Id. at 381-82.

Even more recently in Vasquez v. Bridestone/Firestone, Inc., 325 F.3d 665 (5th Cir. 2003), a similar issue arose over Mexican law, which limited wrongful death liability to approximately $5,700 plus an unspecified amount of "moral damages."  However, a Texas district court found that the Mexican forum was adequate, and the Fifth Circuit agreed on appeal, citing Gonzalez.  The

13

appeals court stated:

> We are mindful of the disparate levels of wrongful
> death damages provided under Texas and Mexican law
> and the incentive for plaintiffs to sue in the
> United States. Given that all decedents and
> plaintiffs are Mexican, however, there is little
> justification for applying Texas law, which seeks
> to "protect[ ] the rights of its *citizens* to
> adequate compensation." Were we to apply Texas law
> as a means of righting any perceived inequities of
> Mexican law, we would be undercutting Mexico's
> right to create a hospitable climate for
> investment. Uniformity, predictability, and
> accommodation of the competing policies of the two
> nations favor applying Mexican law.

325 F.3d at 675.

Despite this Court's strong belief that the remedy available in Nigeria is so clearly inadequate that, in reality, it is no remedy at all, this Court must consider whether it is compelled by the Fifth Circuit decisions of Gonzalez and Vasquez to nonetheless dismiss this case in favor of the Nigerian proceeding.  But the Court finds there are several factors present in the instant case that distinguish it from the Gonzalez and Vasquez cases.  First, in those cases not only did the accidents occur in Mexico, but the decedents and claimants were all Mexican citizens, and the Fifth Circuit found no basis upon which it should "replace the preference of the Mexican government with our own view of what is a good policy for the citizens of Mexico." Gonzales, 301 F.3d at 382.  The Court interprets this

14

to mean that an American court should not substitute its moral or policy judgment as to the value Mexico places on the life of one of its own citizens, especially where only Mexican citizens are involved and the accident occurred in that country.  Here, neither party to this dispute is a Nigerian citizen.  Neither vessel flies a Nigerian flag.  In fact, the only connection to Nigeria is that the collision occurred in its waters.  It does not appear that Nigeria has the same degree of interest in placing a limitation on the maximum recovery for the damage to one of these Greek vessels.

Second, although not dispositive, the Court does consider that following the collision, the M/V CAPTAIN P continued on its scheduled voyage, traveling to New Orleans where she was seized, resulting in *in rem* jurisdiction in this Court.  That <u>res</u>, in the form of a $3.25 million dollar letter of undertaking, remains within the jurisdiction of this Court.

Third, in <u>Gonzales</u> and <u>Vasquez</u> it was the <u>substantive</u> law of Mexico that placed a limited value on the life of Mexican citizens.  These cases and other precedent in the same line generally involve personal injury claims for injuries or wrongful deaths to foreign citizens, occurring in foreign jurisdictions. It may make sense to say that in those circumstances, a foreign forum that allows some remedy, although not as generous as in the

United States, is nonetheless "adequate" in the context of a
*forum non conveniens* analysis.  Mexico obviously does not place
the same value on human life as does our own country.  But,
unlike a personal injury or human life, the value of a seagoing
vessel should not greatly vary according to where it happens to
travel, or where it happens to be involved in a collision.  The
M/V CAPTAIN P was stipulated to be valued at $3.25 million, based
on its condition following the collision, not because it was
seized in the United States.  Presumably, it would be valued at
the same amount while still in Nigeria.  Nigerian law does not
say that this vessel is not worth $3.25 million.   In this case,
there is only a procedural rule of Nigeria which limits the
remedy available regardless of the actual damages sustained or
the actual value of the vessel.

Fourth, in both Gonzales and Vasquez, the district court had
exercised its discretion to dismiss on the basis of *forum non
conveniens.*  The Fifth Circuit in each case affirmed, finding the
trial court had acted within its discretion by granting the
dismissal.  That does not mean, however, that the trial court
would have necessarily abused its discretion if it had denied
dismissal.

The Nigerian law on limitation of liability, under the facts
of this particular case, allows a possible remedy that is "so

16

clearly inadequate or unsatisfactory that it is no remedy at all." <u>Piper</u>, 454 U.S. at 254.  This "may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice." <u>Id</u>.  Dismissal of this case would not be in the interests of justice.  If the language in <u>Piper</u> means anything, then there must be some level at which a remedy, although available, becomes "so clearly inadequate or unsatisfactory that it is no remedy at all."

Because the Court has found that the Nigerian remedy is not an adequate alternative, dismissal may be denied on that ground alone.  The Court need not go any further in the *forum non conveniens* analysis. <u>Perusahaan</u>, 711 F.2d at 1238.  However, in an abundance of caution, the Court will complete the exercise and consider all of the <u>Gulf Oil</u> private and public interest factors that may weigh in favor of or against maintaining this lawsuit here.

The most obvious and significant connection to the United States is that the M/V CAPTAIN P was found and seized in the Port of New Orleans at her first port of call following the collision. In order to have its vessel released, the owner of the M/V CAPTAIN P posted security in the form of a Letter of Undertaking in the amount of $3.25 million U.S. dollars.  That <u>res</u> remains, giving the Court *in rem* jurisdiction over this controversy.  With regard to the relative ease of access to sources of proof, the

ESTELLA is apparently a near total loss, still sitting in the river in Nigeria, where it is available for inspection or viewing by the parties or the Court in Nigeria.  Defendant argues that the principal liability witnesses are the pilots, who can be compelled to appear at trial in Nigeria, but not in the United States.  Even if their depositions can be taken, their testimony might be "lost in translation."  Also, it might be necessary to hear expert testimony concerning the rules applicable to piloting and navigating on the Bonny River in Nigeria, and such individuals are likely to be located in that country rather than the United States.

Defendant suggests that the public interest factors also weigh in favor of finding Nigeria as the more appropriate forum — most importantly, Nigeria's interest in having controversies that arise there decided there.  Defendant argues that the United States has no stake in this dispute, which occurred on foreign waters and involved no American interests.  This Court would be required to hear evidence as to liability under Nigerian law, on which it is, admittedly, not familiar.  Last, if the Court denied this motion to dismiss, that might spawn a "race to judgment" between this Court and the Nigerian court, which could potentially end in the problematic scenario of this Court having to determine how a judgment or ruling in Nigeria affects the proceedings here.

In response, Plaintiff argues that the balance of private and public interest factors weighs against dismissal.  As for ease of access to sources of proof, Plaintiff points out that the crew members of the M/V CAPTAIN P have already been deposed. None of the crew members from either vessel are Nigerian.  As is common in maritime cases involving crews of seagoing vessels, it is unclear where these individuals may be at the time of trial, and the parties may submit excerpts from their depositions in lieu of live testimony.  Such a procedure is not allowed in Nigeria; however, it is allowed here.  If the testimony of the Nigerian pilots is needed, Plaintiff suggests that their depositions be taken in Nigeria and their deposition testimony be used at trial here in lieu of their live testimony.  Plaintiff also claims that although the ESTELLA is in Nigeria, the parties could not board her to engage in pre-trial discovery and view her documents because pre-trial discovery is not allowed in Nigeria; such is, however, allowed here and can be taken if this case remains here.  Therefore, Plaintiff argues that these factors weigh against dismissal, but at the very least, they do not clearly weigh in favor of dismissal as Gulf Oil and Piper require.

Plaintiff argues that the public interest factors weigh heavily against dismissal - especially because this case involves a maritime *in rem* proceeding.  Plaintiff further claims that

special considerations should be analyzed in *in rem* proceedings. "One of the most universally recognized rules of law is that which gives the right to libellant, possessing a maritime lien against a vessel, to proceed *in rem* in the jurisdiction where the vessel is found." <u>Carbon Black Export, Inc. v. S.S. MONROSA</u>, 254 F.2d 297 (5th Cir. 1958). Plaintiff last claims that the Fifth Circuit has held that to warrant forum non conveniens dismissal in an *in rem* proceeding, it would have to be shown that the defendant "would suffer inconvenience tantamount to injustice." <u>Perusahaan</u>, 711 F.2d at 1238.

After careful consideration of all of the public and private interest factors, the Court concludes that they do not weigh so strongly in favor of Nigeria to require dismissal.[6]   As pointed out by counsel, the primary fact witnesses will be those crew members aboard the two vessels involved in the collision.   Those crew members have already been deposed.   It is very common in this type of maritime litigation for the crew members to be unavailable to testify live at trial, and for that reason, such testimony is commonly introduced by deposition.  With regard to expert witnesses, courts have recognized that these witnesses are

_____

[6]     Contrary to Plaintiff's assertion, the law does not require Defendant to show that it would suffer "inconvenience tantamount to injustice" to warrant dismissal of an *in rem* proceeding.  In fact, the <u>Gulf Oil</u> balancing analysis still applies here, even though this is an *in rem* action. <u>Perusahaan</u>, 711 F.2d at 1236 ("*In rem* admiralty actions do not represent an exception to the *Gilbert* balancing analysis. * * * [i]t is beyond question that the Supreme Court's opinion in [<u>Gulf Oil</u>] is the 'fountainhead' decision applicable in all forum non conveniens cases").

within the control of the parties, and they can either be brought

to trial voluntarily or their expert reports and deposition

testimony can be submitted.  This should not be an overriding

factor in this analysis.  The vessels' logs and other necessary

documents can easily be transmitted to New Orleans.   The M/V

CAPTAIN P was found and seized in New Orleans and presumably was

boarded and inspected while she was detained here.  It is true

that the ESTELLA remains in the waters of Nigeria, apparently

unable to navigate.   There is some question as to how accessible

the vessel has been or will be during the Nigerian litigation.

Clearly, if it is possible for experts to board the ESTELLA as

she sits in Nigeria, any such evidence can be easily presented at

a trial in this court, using their expert reports and depositions

or video-conferencing - so that nothing is "lost in translation."

Of course, photographs of the ESTELLA can also be introduced.

Although there may be some additional costs involved in a trial

in the United States versus a trial in Nigeria, that is not

necessarily the case considering that neither party in this case

appears to have any connection to Nigeria at this time - other

than the fact that the ESTELLA remains there.  As far as the cost

of obtaining testimony from expert or lay witnesses, it is

apparent to the Court that such testimony will be largely by

depositions and reports, no matter where the case is tried.[7]
Finally, with regard to private factors, the Court sees no other
practical problems that would impede an expeditious and efficient
trial in this district.   Most of the judges of this Court,
including the undersigned, are very experienced in handling
complex maritime litigation.

With regard to the public factors, this Court does not
suffer from a congested docket, and foresees no administrative
difficulties in handling this case.[8]  Since this *in rem* action is
recognizable only in Admiralty, this will be a bench trial, and
there is no worry about imposing jury duty on citizens of a
district with no relation to the controversy.   Another public
factor is that local controversies should be decided at home.
The collision did occur in Nigerian waters, so that country does
have some interest in the matter.   On the other hand, Defendant's
vessel was found and seized in the Port of New Orleans during its

---

[7]     As the Fifth Circuit noted in <u>Perusahaan</u>, there is no way to
predict where the crew members of particular vessels may be at the time of
trial, so the convenience of obtaining their testimony at trial likely does
not strongly favor any particular forum.  Also, the availability of compulsory
process is of less value for expert witnesses than it is for eye-witnesses who
are not associated with a particular party.  Experts witnesses are usually
familiar with and accustomed to traveling long distances to fulfill their
obligations, whether they are to provide testimony at trial or to view a
damaged vessel.   <u>See</u> 711 F.2d at 1240, n. 25, 26.

[8]     Although no evidence on this point was submitted, counsel for
Plaintiff claimed at oral argument that based on his dealings with Nigerian
maritime counsel, he is advised it may take up to twenty years for the
Nigerian courts to resolve this litigation. Opposing counsel neither conceded
nor disputed this statement. Administrative Office statistics and the Court's
own experience show that this litigation would likely be resolved within the
next 12-18 months.

scheduled voyage.  The "res" remains here. Neither party is a citizen of Nigeria (or of the United States), so this factor does not necessarily weigh so heavily to require dismissal.[9]

Accordingly,

**IT IS ORDERED** that Defendant's **Motion to Dismiss on the Basis of Forum Non-Conveniens, International Comity and *Lis Alibi Pendens*. (Rec. Doc. 41)** should be and hereby is **DENIED**.

New Orleans, Louisiana, this <u>13th</u> day of October, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[9]      Because the Court finds that the Nigerian Court is not an adequate forum in the context of this case, the Court declines to dismiss this suit based on international comity or lis pendens.